O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE STARLATER DILLARD,<br><br>            Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>            Defendant. | Case No. CV 14-8000 RNB<br><br>ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

The sole disputed issue listed in the Joint Stipulation ("Jt Stip") is whether the ALJ made a proper adverse credibility determination with respect to plaintiff's subjective symptom testimony. (See Jt Stip at 4.) The Court now rules as follows with respect to that issue.[1]

//

---

[1] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the administrative record ("AR"), and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).

Plaintiff alleged that she was disabled because of scoliosis, asthma, congenital heart failure, and back problems; she also had a history of obesity, based on her height of five feet three inches and her weight of 264 pounds. (See AR 48, 95.) During the administrative hearing, plaintiff testified as follows about her injuries, limitations, and medications. Plaintiff injured her back in 2011, when she tried to lift a person while working as a home attendant. (See id. 41.) She has constant lower back pain, which radiates to her left shoulder and left leg. (See id. 42.) She can sit or stand for 20 minutes at a time, but she spends most of the day sleeping. (See id. 44.) Her pain medications include Gabapentin, Norco, and Dilaudid. (See id.)

The ALJ determined that, although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not credible" to the extent they were inconsistent with the ALJ's residual functional capacity assessment. (See AR 20.) In support of this adverse credibility determination, the ALJ proffered three reasons. As discussed hereafter, the Court finds that the ALJ's reasons were not legally sufficient to support his adverse

credibility determination.

One of the reasons proffered by the ALJ was that plaintiff's daily activities were "inconsistent with her allegation of total disability." (See AR 20.) In this regard, the ALJ cited evidence purporting to show that plaintiff's activities included "providing pastoral care and volunteer services, performing household chores and going shopping at her own pace, going on brisk walks on a daily basis, and earning good grades while obtaining a GED." (See id.) However, the record showed none of these things. Rather, the record contained little evidence of plaintiff's daily activities other than her testimony that she spends most of the day sleeping. (See id. 44.) Moreover, plaintiff gave uncontested testimony that she did not finish high school or obtain a GED. (See id. 42.) Under these circumstances, the Court concurs with plaintiff that the ALJ appeared to confuse plaintiff with someone else. (See Jt Stip at 8.)

The next reason proffered by the ALJ was that the medical record did not substantiate plaintiff's allegations of disabling limitations, in six respects. (See AR 20.) First, the ALJ noted that "there is no treating or examining source in the record that precludes [plaintiff] from performance of all work activity." (See id. 20-21.) Although the ALJ is technically correct in this regard, the record nonetheless reflects that two treating physicians – Dr. Sadik and Dr. Kumar – each submitted opinions in support of plaintiff's disability claim (see AR 528, 553), even though the record does not contain the opinions themselves. Accordingly, the Court finds that the existing record was too ambiguous for the ALJ to properly conclude, without fully and fairly developing the record, that no treating source had precluded plaintiff from performance of all work activity. See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered . . . when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

//

1	Second, the ALJ noted that x-rays taken in March 2011 showed only "mild" cervical spondylosis in the cervical spine and showed only "mild" degenerative changes and "mild" scoliosis in the lumbar spine. (See AR 21; see also id. 479-81.) However, the ALJ's reasoning did not account for MRIs taken in May 2012 that appeared to show a worsening of plaintiff's back condition: the MRIs revealed, inter alia, multilevel herniated nucleus pulposus with foraminal stenosis in the lumbar spine and lateral disc protrusions with spurs in the thoracic spine, for which plaintiff received epidural injections and prescription pain medications such as Vicodin. (See AR 527, 533, 535-36, 561-63.) Accordingly, the Court finds that the overall diagnostic picture did not support a characterization of plaintiff's back condition as only "mild." See generally Ghanim v. Colvin, 763 F.3d 1154, 1161-62 (9th Cir. 2014) (an ALJ's consideration of the medical evidence must include the "context of the overall diagnostic picture" or the medical record on the whole).

Third, the ALJ noted that an abdominal CT scan, taken when plaintiff visited an emergency room for abdominal pain and blood in her stool, was normal. (See AR 21; see also id. 416.) The ALJ similarly noted that an examining psychiatrist, Dr. Jordan, had reported no Axis I psychiatric diagnosis and had assessed no mental limitations. (See id. 22; see also id. 343-47.) However, the Court finds that this evidence did not give rise to a legally sufficient reason to reject plaintiff's subjective symptom testimony because plaintiff never alleged that she was disabled because of abdominal pain and blood in her stool, nor did she allege that her disability was primarily psychiatric-based; indeed, plaintiff admitted to Dr. Jordan that "her main emotional problems were being in constant pain." (See id. 344.)

Fourth, the ALJ noted that "the record indicated no emergency room visits or hospitalizations for shortness of breath." (See AR 21.) To the contrary, the record does indicate that plaintiff sought emergency room treatment for shortness of breath. (See id. 309, 314-19, 453-62.) The record also reflects that plaintiff's asthma is a longstanding condition for which she has sought treatment repeatedly. (See, e.g., id.

470, 483, 492.) Moreover, even assuming arguendo that the ALJ was correct about the record in this regard, the Court could not find that the ALJ's implicit lay determination that plaintiff's treatment for shortness of breath was conservative was a legally sufficient basis to reject plaintiff's subjective symptom testimony, given that no medical professional characterized plaintiff's treatment as conservative or incommensurate with her subjective complaints.  See Schomas v. Colvin, 732 F.3d 702, 709 (7th Cir. 2013) (ALJ's lay reasoning that treatment was conservative because claimant was not hospitalized or did not visit the emergency room more frequently "impermissibly substitutes the ALJ's personal observations for the considered judgment of medical professionals"); see generally Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not qualified as a medical expert).

Fifth, the ALJ noted that an examining physician, Dr. Taylor, had assessed no functional limitations after conducting an Internal Medicine Evaluation in September 2011. (See AR 22; see also id. 338-42.) However, Dr. Taylor acknowledged that she did not review plaintiff's entire record (see id. 341): in particular, Dr. Taylor could not review plaintiff's MRIs from May 2012 or evidence of the back treatment plaintiff received after the Internal Medicine Evaluation.  Accordingly, the Court finds that this was not a legally sufficient basis to reject plaintiff's subjective symptom testimony because the evidentiary value of an examining physician's opinion diminishes when she did not have an opportunity to review important evidence from a claimant's medical record.  See generally Amaro v. Colvin, - F. App'x -, 2015 WL 3483284, at *2 (9th Cir. May 13, 2015) (now citable for its persuasive value per Ninth Circuit Rule 36-3); Saunders v. Astrue, 433 F. App'x 531, 533 (9th Cir. 2011); Conley v. Commissioner of Social Security Administration, 321 F. App'x 575, 577 (9th Cir. 2009).

Sixth, the ALJ noted that plaintiff's course of treatment in general had been "conservative in nature" without elaboration. (See AR 22.) The Court finds that this vague reason was not a legally sufficient basis to reject plaintiff's subjective symptom

5

testimony because the ALJ did not specify the medical evidence that purportedly showed the conservative nature of plaintiff's treatment. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ must provide 'clear and convincing' reasons to reject a claimant's subjective testimony, by specifically identifying 'what testimony is not credible and what evidence undermines the claimant's complaints.'") (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) ("It's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible."). Moreover, the Court doubts that plaintiff's treatment, which included, as noted above, prescription pain medications and epidural injections (see AR 44, 533, 535-36), could properly be characterized as conservative. See Garrison v. Colvin, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) (doubting that epidural injections constituted conservative medical treatment).

The final reason proffered by the ALJ for his adverse credibility determination was that plaintiff's "verbal responses and overall demeanor" at the administrative hearing "were not suggestive of a person who is experiencing disabling limitations." (See AR 22.) Specifically, the ALJ observed that plaintiff "was able to enter and exit the hearing room without much difficulty, and to answer questions quite thoroughly and clearly, all despite her alleged disabling limitations." (See id. 22-23.) As a preliminary matter, plaintiff's observed ability to answer questions properly seems inapposite to her alleged limitations, which were primarily physical. Moreover, to the extent that plaintiff's observed ability to enter and exit the hearing room was arguably relevant to her subjective symptom allegations of back and leg pain, such a reason by itself could not be a legally sufficient basis for the ALJ's adverse credibility determination, given the legal insufficiency of all of the ALJ's other reasons. See Orn v. Astrue, 495 F.3d 625, 639-40 (9th Cir. 2007) ("The ALJ's observations of a claimant's functioning may not form the sole basis for discrediting a person's testimony. . . . Because the ALJ's other reasons for rejecting [plaintiff]'s testimony

fail, the ALJ's personal observations standing alone cannot support the adverse credibility finding.").

In conclusion, the Court finds that reversal is warranted based on the ALJ's failure to make a proper adverse credibility determination.

## CONCLUSION AND ORDER

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. See, e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981). Remand is warranted where additional administrative proceedings could remedy defects in the decision. See, e.g., Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984); Lewin, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

Here, the Court notes that plaintiff requests only remand for additional administrative proceedings. (See Jt Stip at 21.) Moreover, the Court has concluded that this is not an instance where no useful purpose would be served by further administrative proceedings; rather, additional administrative proceedings still could remedy the defects in the ALJ's decision. See Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1103-07 (9th Cir. 2014) (remanding for additional administrative proceedings where the ALJ had failed to make a proper adverse credibility determination and discussing cases).

//
//

Accordingly, IT IS HEREBY ORDERED that, pursuant to sentence four of 42 U.S.C. § 405(g), Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.[2]

DATED: July 9, 2015

_____
ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE

---

[2] It is not the Court's intent to limit the scope of the remand.